**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LINDA GRAMAJOS, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

BOBO'S FORDHAM BRONX INC.,
BOBO'S COOP CITY INC.,
BOBO'S DYCKMAN SHERMAN INC.,
BOBO'S SOUNDVIEW BRONX INC.,
OCEANIC DELIGHTS GROUP INC., and BO WANG,

Defendants.

Case No.:

**SECOND AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff LINDA GRAMAJOS ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, BOBO'S FORDHAM BRONX INC., BOBO'S COOP CITY INC., BOBO'S DYCKMAN SHERMAN INC., BOBO'S SOUNDVIEW BRONX INC., OCEANIC DELIGHTS GROUP INC., (together, "Corporate Defendants") and BO WANG ("Individual Defendant", and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) illegally retained

gratuities; (3) unpaid wages, due to the issuance of unsigned and/or dishonored checks; (4) liquidated damages; and (5) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, due to time shaving; (2) illegally retained gratuities; (3) unpaid wages, due to the issuance of unsigned and/or dishonored checks; (4) damages for late payment of wages; (5) unpaid spread of hours premiums; (6) liquidated damages; (7) statutory penalties; and (8) attorneys' fees and costs.

3. Plaintiff further alleges, on an individual basis, that Defendants unlawfully retaliated against her for raising complaints regarding Defendants' failure to timely pay her full wages, in violation of the NYLL, and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, (3) compensatory damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants transacted business and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6. For all relevant periods, Plaintiff LINDA GRAMAJOS was a resident of Bronx County, New York.

7. Corporate Defendants own and operate Bobo's Crab Shack, a chain of seafood restaurants in the Bronx and Manhattan specializing in Louisiana-style seafood boils. Corporate Defendants' restaurants are located at the following addresses:

| **Name** | **Address** |
|---|---|
| Bobo's Crab Shack Fordham | 2450 Grand Concourse, Bronx, NY 10458 |
| Bobo's Wing & Seafood | 25 East Bedford Park Blvd., Bronx, NY 10468 |
| Bobo's Crab Shack Co Op City (closed) | 691 Co Op City Blvd., Bronx, NY 10475 |
| Bobo's Crab Shack Dyckman (closed) | 130 Dyckman St., New York, NY 10040 |
| Bobo's Crab Shack Soundview (closed) | 1590 Westchester Ave., Bronx, NY 10472 |

(together, the "Restaurants").

8. Corporate Defendant BOBO'S FORDHAM BRONX INC. is a domestic business corporation with a principal place of business and address for service of process at 2450 Grand Concourse, Bronx, NY 10458.

9. Corporate Defendant OCEANIC DELIGHTS GROUP INC. is a domestic business corporation with a principal place of business at 25 East Bedford Park Blvd., Bronx, NY 10468 and an address for service of process at 100 West 58th Street #F, New York, NY 10019.

10. Corporate Defendant BOBO'S COOP CITY INC. is a domestic business corporation with a principal place of business and address for service of process at 691 Co Op City Blvd., Bronx, NY 10475.

11. Corporate Defendant BOBO'S DYCKMAN SHERMAN INC. is a domestic business corporation with a principal place of business and address for service of process at 130 Dyckman St., New York, NY 10040.

12. Corporate Defendant BOBO'S SOUNDVIEW BRONX INC. is a domestic business corporation with a principal place of business and an address for service of process at 1590 Westchester Avenue, Bronx, NY 10472.

13. Individual Defendant BO WANG is the owner, founder, and manager of Corporate Defendants. *See* **Exhibit A** (Bo Wang's LinkedIn); **Exhibit B** (Employment Letter). Individual Defendant BO WANG exercises operational control as it relates to all employees including Plaintiff and Class Members. Individual Defendant BO WANG frequently visits the Restaurants. Individual Defendant BO WANG exercises, and also delegates to managers and supervisors, the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules and conditions of employment; (iii) determine the rate and method of compensation, *see* **Exhibit C** (Text Messages); (iv) maintain employment records, *see* **Exhibit B**; and (v) otherwise affect the quality and terms and conditions of employment for Plaintiff and Class Members. At all relevant times, Restaurant employees may complain to Individual Defendant BO WANG directly regarding any of the terms of their employment, and Individual Defendant BO WANG would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. *See* **Exhibit C**. Individual Defendant BO WANG exercised functional control over the business and financial operations of Corporate Defendants. Individual Defendant BO WANG has the power and authority to supervise and control supervisors of Plaintiff and Class Members and could reprimand employees.

*Defendants' Single Integrated Enterprise*

14. Defendants operate or operated the Restaurants as a single integrated enterprise, under the control of their owner, Individual Defendant BO WANG. Specifically, Corporate Defendants are engaged in related operations, possess centralized control of labor relations, and share common management and common ownership:

(a) All the Restaurants are advertised together on Defendants' single website, boboscrabshack.com, which lists all locations together under the common

"Bobo's Crab Shack" brand name and provides each location's phone number. *See* **Exhibit D** (Restaurants' Website). All locations share a common email address, contact@boboscrabshack.com.

(b) Moreover, all Restaurant locations are promoted through a single, unified set of social media accounts, including a single Instagram account (@boboscrabshack), a single Facebook page ("Bobo's Crab Shack"), a single TikTok account (@boboscrabshack), and a single Linktree page listing ordering links for all locations. *See* **Exhibit E** (Restaurants' Social Media Pages). Further, Defendants' social media accounts cross-promote all Restaurant locations together. For example, in posts on Defendants' Instagram account, Defendants advertised both the 2450 Grand Concourse and 25 East Bedford Park Blvd. Restaurants together. In another post, Defendants announced their Soundview Restaurant as their "third location," further demonstrating the interrelated nature of the Restaurants' operations. *See* **Exhibit F** (Instagram Post).

(c) Defendants issue gift cards that are valid at all Restaurants and operate a unified rewards and loyalty program across all locations through a single platform. *See* **Exhibit G** (Gift Cards).

(d) The Restaurants have a centralized Human Resources and Administration Department that deals with hiring, firing, and administering all the Restaurants' workforce. For example, Defendants operate a single employment application via Google Forms through which prospective employees apply for positions at any of the Restaurants, selecting their preferred location from a list that includes all Restaurants. *See* **Exhibit H** (Employment Form).

(e) The Restaurants share common vendors and suppliers. For example, Defendants have advertised on social media that all locations use the same specialty ingredients, including Califia almond milk batter for their fried items. *See* **Exhibit I** (Almond Milk). Indeed, Plaintiff often saw Defendants' manager Melvin Wang transfer supplies between the Restaurants.

(f) Although Plaintiff worked at Defendants' Fordham Restaurant, on at least two occasions, Defendants asked Plaintiff to pick-up shifts at their Co-Op City location to cover for sick employees, demonstrating Defendants centralized control of labor relations. In fact, at one point, Individual Defendant BO WANG offered her a hybrid schedule where she split her time between the Fordham location and Defendants' other Restaurants but due to scheduling issues, she never worked the hybrid schedule. Further, Plaintiff routinely saw Defendants transfer employees between locations on a temporary or permanent basis, including Ashley [LNU] and Ashlyn [LNU].

(g) Individual Defendant BO WANG founded, owns, and operates Bobo's Crab Shack through Corporate Defendants. *See* **Exhibit A; Exhibit B**.

15. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

16. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

17. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18. Plaintiff brings this action on behalf of herself and other similarly situated employees as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including but not limited to servers, cashiers, cooks, kitchen staff, bussers, and delivery workers, among others) employed by Defendants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

19. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to: (1) time shaving; (2) tip retention; and (3) issuing unsigned and/or dishonored checks.

20. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

22. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to servers, cashiers, cooks, kitchen staff, bussers, and delivery workers, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case (the "Class" or "Class Members").

23. All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' records. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty members of the Class. The Class further includes a subclass of tipped employees

("Subclass" or "Subclass Members") who also number more than forty (40). Plaintiff is a member of the Class and Subclass.

25. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (1) failing to pay wages due to time shaving; (2) issuing unsigned and/or dishonored checks; (3) failing to timely pay wages; (4) failing to pay spread of hours premiums; and (5) failing to provide proper wage statements and notices. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

26. Furthermore, Plaintiff and the Subclass also suffered as a result of Defendants' unlawful withholding of gratuities. Defendants' corporate-wide policies and practices affected all Subclass Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Subclass Member.

27. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation, where individual class members lack the financial resources to vigorously prosecute a lawsuit against a

corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30. There are questions of law and fact common to the Class and Subclass which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d) Whether Defendants properly compensated Plaintiff and Class Members for all actual hours worked;

e) Whether Defendants timely paid Plaintiff and Class Members their wages pursuant to NYLL § 191;

f) Whether Defendants paid Plaintiff and Class Members spread of hours premiums for shifts with a spread of ten (10) or more hours;

g) Whether Defendants issued unsigned or otherwise non-negotiable paychecks to Plaintiff and Class Members;

h) Whether Defendants illegally retained Plaintiff's and Subclass Members' gratuities;

i) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

j) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## **STATEMENT OF FACTS**

*Plaintiff's Employment Background*

31. In or around October 2023, Plaintiff was hired by Defendants to work as a server and cashier for Defendants' Bobo's Crab Shack Restaurant, located at 2450 Grand Concourse, Bronx, NY 10458. Plaintiff's employment with Defendants ended in or around October 2024.

32. For the majority of Plaintiff's employment, Plaintiff was scheduled by Defendants to work four (4) days a week, Tuesdays and Fridays to Sundays. On Tuesdays and Sundays, Plaintiff was scheduled to work from 12:00 p.m. to 9:30 p.m., and on Fridays and Saturdays, Plaintiff worked 12:00 p.m. to 11:30 p.m., for a total of forty-two (42) hours in a work week. However, Plaintiff's schedule varied often depending on Defendants' operational needs.

33. At the time of hire, Plaintiff was paid at an hourly rate of $16.00. At all times, Plaintiff was paid by check on a weekly basis.

*Plaintiff's Time Shaving Claim*

34. At all relevant times, Defendants failed to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours worked, due to time shaving.

35. At all relevant times, Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to work approximately fifteen (15) to thirty (30) minutes after they clocked out at the end of their scheduled shifts, performing duties including but not limited to setting up workstations and cleaning. However, Defendants never compensated them for said work and required Plaintiff, FLSA Collective Plaintiffs, and Class Members to clock out at their scheduled end times despite their work not being finished.

36. Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

*Plaintiff's Tip Retention Claim*

37. At all relevant times, Defendants' point-of-sale register system automatically prompted customers to add a gratuity when paying by credit card.

38. Throughout her employment, Plaintiff regularly and consistently saw customers leave tips when prompted by the register system.

39. However, at all relevant times, Defendants failed to remit any portion of these credit card tips to Plaintiff.

40. At all relevant times, Defendants retained FLSA Collective Plaintiffs and Subclass Members' tips as well.

*Plaintiff's Spread of Hours Claim*

41. At all relevant times, Plaintiff was required to work 11.5 hours a day, two (2) times a week. However, Defendants failed to pay any spread of hours premiums to Plaintiff for these workdays on which she worked a spread of more than ten (10) hours. Defendants' failure to pay spread of hours premiums to Plaintiff was clearly intentional. Defendants scheduled Plaintiff to work shifts lasting more than ten (10) hours, and yet failed to compensate Plaintiff for any spread of hours premiums. Class Members were similarly not paid their owed spread of hours premiums for days they worked with a spread of more than ten (10) hours.

42. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their owed spread of hours premiums.

*Plaintiff's Late Payment and Bounced Check Claim*

43. At all relevant times, Defendants regularly failed to timely pay Plaintiff. Approximately 80% of the time, Defendants issued paychecks to Plaintiff one (1) to ten (10) days late. Plaintiff often complained to Defendants, in particular, Melvin Wang, her direct supervisor, about receiving her wages late. Defendants would respond: "Sorry, the owner is having bank issues." When Melvin Wang failed to help her, she would complain directly to Individual

Defendant BO WANG, who had authority regarding all manner of Defendants' operations. *See e.g.* **Exhibit C**. Under NYLL § 191, Plaintiff was (i) a manual worker and (ii) required to be compensated weekly. Given the nature of her position and the industry that she was in, Plaintiff was a manual worker under the NYLL, as Plaintiff spent more than 25% of her shift performing manual labor. Plaintiff's duties involved serving tables, taking orders for take-out and dine-in customers, and packing up delivery orders. Plaintiff's positions and duties involved physical labor for the most part, which qualifies her as a manual worker under the NYLL. As such, Plaintiff was required to be compensated within seven (7) days of the end of the week in which she earned her wages, pursuant to the NYLL. Class Members' paychecks were also routinely late one (1) to ten (10) days.

44. In the last week of September 2024, one of Plaintiff's paychecks bounced due to insufficient funds. Individual Defendant BO WANG would later authorize reissuing the check to Plaintiff. *See* **Exhibit C**. Individual Defendant BO WANG and manager Melvin Wang then told Plaintiff that both the original and reissued checks were cashed, and because of this, Defendants would withhold any future paychecks from Plaintiff unless she showed them her bank statements to prove that she did not cash them twice. FLSA Collective Plaintiffs and Class Members were similarly issued bounced and/or dishonored checks by Defendants.

*Plaintiff's Retaliation Claim*

45. After Plaintiff complained to Defendants about her bounced paychecks, in or around the beginning of October 2024, Defendants began issuing Plaintiff paychecks that were unsigned, preventing her from cashing them. Despite her repeated complaints, Defendants never reissued the unsigned checks. This action was taken in retaliation for Plaintiff's persistent complaints about the bounced checks and the late wage payments throughout her employment.

Due to Defendants' repeated and retaliatory failures to issue proper paychecks, Plaintiff resigned in or around October 2024.

*Wage Statement Claims*

46. At all relevant times, Defendants failed to provide accurate wage statements to Plaintiff and Class Members in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

47. In failing to provide proper wage statements, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

48. New York Courts continue to find sufficient standing to support these claims. One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in Guthrie. Therefore, the Court finds for Plaintiffs on this issue."
>
> *Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

49. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* Specifically, Defendants required Plaintiff to clock out at her scheduled end

time and then continue working approximately fifteen (15) to thirty (30) minutes off the clock, and Defendants' wage statements reported only the hours between Plaintiff's clock-in and clock-out times, rather than the hours she actually worked. Had Defendants listed the actual number of hours Plaintiff worked on her wage statements, while paying her only for the hours between her clock-in and clock-out times, each wage statement would have been conclusive documentary proof, created by Defendants themselves, that Defendants failed to pay her for all hours worked. With such proof, Plaintiff would have had easy legal redress, as she could have presented the wage statements to Defendants, the New York State Department of Labor, or a court and demanded payment for her unpaid hours.

50. Instead, by misstating Plaintiff's hours worked on her wage statements, Defendants deprived her of that evidence. The only records Defendants provided to Plaintiff reflecting her hours worked are wage statements that affirmatively, but falsely, contradict her claim. As a result, Plaintiff lacks any documentary evidence of her off-the-clock work and must rely on her own recollection to prove the hours she worked, against wage statements issued by Defendants that state otherwise. Plaintiff's experience during her employment confirms the value of such proof. When Plaintiff had documentary proof that she had not been properly paid, as when her paycheck bounced due to insufficient funds, Individual Defendant BO WANG authorized reissuing the check. *See* **Exhibit C**. By contrast, because Defendants' inaccurate wage statements concealed her off-the-clock hours, Plaintiff had no document with which to demand payment for that time, and Defendants never paid her for it. Defendants' inaccurate wage statements thus prevented Plaintiff from obtaining full payment of her wages in a timely fashion and impaired her ability to prove and recover those wages.

51. Further, by failing to report all of Plaintiff's and Class Members' wages, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 forms, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide by failing to provide proper wage statements.

52. Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving.

53. Specifically, a wage notice accurately disclosing the rate at which Defendants actually intended to compensate Plaintiff for her hours worked would have informed Plaintiff that her true wage rate was lower than $16.00 per hour. Had Plaintiff received such notice, she would have declined employment with Defendants and taken another job that would pay her the full stated hourly rate for all hours worked. Instead, because Defendants failed to provide an accurate wage notice, Plaintiff accepted employment with Defendants based on the $16.00 hourly rate she was promised, without knowing that her true wage rate was lower. As a result, Plaintiff lost the opportunity to take other employment and lost the difference between the wages she received from

Defendants and the wages she would have earned in a job that paid her the full stated rate for all hours worked. Class Members were injured in the same manner.

54. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notice and accurate wage statements, in violation of the NYLL.

55. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

56. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

57. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

58. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

59. At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

60. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs wages for all hours worked, including overtime, due to time shaving.

61. At all relevant times, Defendants had a policy and practice that illegally retained all tips earned by Plaintiff and FLSA Collective Plaintiffs.

62. At all relevant times, Defendants had a policy and practice of issuing unsigned and/or dishonored checks to Plaintiff and FLSA Collective Plaintiffs, resulting in a failure to pay wages for all hours worked.

63. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

64. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their intentional failure to compensate Plaintiff and FLSA Collective Plaintiffs for every hour they worked, including regular hours and overtime hours.

65. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

66. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

67. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages,

including overtime, unpaid wages due to unsigned and/or dishonored checks, plus an equal amount as liquidated damages.

68. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

69. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

70. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL §§ 2 and 651.

71. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay wages for all hours worked, due to Defendants' policy of time shaving.

72. At all relevant times, Defendants had a policy and practice that illegally retained all tips earned by Plaintiff and Subclass Members.

73. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay wages for all hours worked, due to issuing unsigned and/or dishonored checks.

74. Defendants willfully violated Plaintiff's and Class Members' rights by failing to timely pay their full weekly wages, as required by NYLL § 191(1)(a).

75. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay spread of hours premiums for all shifts worked in excess of ten (10) hours.

76. Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

77. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

78. Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages due to time shaving, unpaid wages due to unsigned and/or dishonored checks, spread of hours premiums, damages for late payment of wages, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL.

**COUNT III**

**RETALIATION UNDER THE NEW YORK LABOR LAW**

79. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

80. At all relevant times Plaintiff was an employee of Defendants within the meaning of the NYLL and was a person covered by and intended to benefit from the provisions of the NYLL.

81. Defendants willfully violated the NYLL by issuing unsigned checks to Plaintiff in retaliation for her repeated complaints about Defendants' late payments.

82. Defendants' actions constitute a violation of § 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner. . . . (emphasis added).

83. Defendants' issuance of unsigned checks was a retaliatory action against Plaintiff, which was done in willful disregard of the provisions of the NYLL.

84. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, punitive damages, interest, attorneys' fees, and costs, as provided for under the NYLL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them prohibiting them from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, due under the FLSA and the NYLL;

d. An award of unpaid wages as a result of time shaving, due under the FLSA and the NYLL;

e. An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(ii);

f. An award of unpaid wages as a result of issuing unsigned or otherwise non-negotiable checks, due under the FLSA and the NYLL;

g. Disgorgement of illegally retained tips under the FLSA and NYLL;

h. An award of spread of hours premiums for days worked with a spread of ten (10) or more hours, due under the NYLL;

i. An award of back pay, front pay, compensatory damages, punitive damages, damages for egregious emotional distress, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the NYLL;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, pursuant to 29 U.S.C. § 216;

k. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, pursuant to the NYLL;

l. An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

m. An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

n. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

o. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

p. Designation of this action as a class action pursuant to F.R.C.P. 23;

q. Designation of Plaintiff as Representative of the Class and Subclass; and

r. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 28, 2026

Respectfully submitted,

By: _/s/ C.K. Lee_

C.K. Lee

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (2903557)
Anne Seelig (4192803)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*